UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD C. TRIANO,

                              Plaintiff,

          -v-

TOWN OF HARRISON, NY; P.O. STEPHAN
BARONE,
                              Defendants.

Case No. 09-CV-6319 (KMK)

OPINION AND ORDER

Appearances:

Gary Mitchel Gash, Esq.
Gash & Associates, P.C.
White Plains, New York
*Counsel for Plaintiff*

Neil Stuart Torczyner, Esq.
Friedman, Harfenist, Kraut & Perlstein
Lake Success, New York
*Counsel for Defendant*s

KENNETH M. KARAS, District Judge:

          Richard C. Triano ("Plaintiff") brings this action against the Town of Harrison, New

York ("Town" or "Town of Harrison") and Police Officer Stephan Barone ("Barone") in his

individual and official capacity (collectively, "Defendants"), alleging that Defendants are liable

under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourth, Fifth, and Fourteenth

Amendments.[1]  The Town moves to dismiss Causes of Action Three and Seven of Plaintiff's

---

[1] On January 4, 2012, the Parties filed a stipulation of partial discontinuance whereby
Plaintiff dismissed all claims against the Town of Harrison Police Department and Lt. Robert
Collins.  (Dkt. No. 43.)  Plaintiff also agreed to discontinue, with prejudice, his state law claims
and claims brought under 42 U.S.C. §§ 1985 and 1986 (his Fourth, Fifth, Sixth, Eighth, and
Ninth Causes of Action).  (*Id.*)

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons
stated herein, the Town's motion is granted.

I. Background

A. Facts

The Court assumes the following facts, as alleged in the Amended Complaint, to be true
for purposes of the Motion to Dismiss.  At about 10:00 p.m. on July 2, 2006, Defendant Barone,
of the Town of Harrison Police Department, arrived at Plaintiff's home in West Harrison to
investigate an alleged theft of services regarding a taxi cab fare.  (Am. Compl. ¶¶ 23-25.)
Plaintiff's mother answered the door, and without invitation, Barone entered the apartment and
walked into Plaintiff's bedroom, where Plaintiff was in his bed.  (*Id.* ¶ 25.)  Barone directed
Plaintiff to walk into the living room of the apartment, and Plaintiff waited there while Barone
went outside to speak to the taxi driver.  (*Id.* ¶ 26.)  Plaintiff and his mother heard Barone say to
the taxi driver: "Just say it's Richie, because either way I'm locking Richie up tonight."  (*Id.*
¶ 27.)  Barone then re-entered the apartment and allegedly grabbed Plaintiff's left wrist and
attempted to pull Plaintiff toward the front door.  (*Id.* ¶ 28.)  Plaintiff protested, saying that he
wanted to get his shoes, and Barone then lost his grip on Plaintiff's wrist.  (*Id.* ¶ 29.)  As Plaintiff
entered his bedroom to get his shoes, Barone chased him and allegedly slammed Plaintiff into
the door and into the wall, while twisting Plaintiff's right arm and hand behind Plaintiff's back.
(*Id.* ¶ 30.)  When Plaintiff's mother protested, Barone allegedly told her "I'll break both of his
arms," and threw her to the floor.  (*Id.* ¶ 31.)  After Plaintiff was handcuffed, Barone "violently
threw Plaintiff to the floor, while thrusting his knees on top of Plaintiff's legs."  (*Id.* ¶ 32.)
Plaintiff claims that he never attacked or provoked Barone.  (*Id.* ¶ 33.)

Plaintiff was taken to the police station, where after two hours, he was given an Appearance Ticket for Theft of Services and Resisting Arrest. (*Id.* ¶ 35.) The next morning, Plaintiff went to the Emergency Room at the White Plains Hospital. (*Id.* ¶ 37.) Plaintiff claims that as a result of Barone's actions, he has "suffered severe and permanent physical pain and suffering, he has undergone multiple surgeries to his entire body, including his bones and joints, and he is suffering severe and continuing emotional distress and mental anguish." (*Id.* ¶ 41.)

B. Procedural History

Plaintiff filed a Notice of Claim against the Town of Harrison on September 28, 2006, and on June 29, 2007 he filed a Summons with Notice in New York Supreme Court, Westchester County, naming the Town of Harrison and the Town of Harrison Police Department as Defendants. (*Id.* ¶¶ 7-10; Decl. of Neil Torczyner, Exs. B, C.)[2] On July 26, 2007, Defendants removed the action to federal court, and on December 14, 2007, the action was discontinued without prejudice. (Am. Compl. ¶¶ 11-13.) On June 24, 2009 Plaintiff filed a Complaint with the Court's pro se office naming the Town of Harrison, Lieutenant Robert Collins, Police Officer Stephan Barone, and the Town of Harrison Police Department as Defendants. (Dkt. No. 2.)

Plaintiff obtained counsel in November 2009 (Dkt. No. 12), and upon leave of the Court, filed an Amended Complaint on August 9, 2011, (Dkt. No. 37). In his First and Second Causes of Action, Plaintiff brings claims against Barone under 42 U.S.C. § 1983. (Am. Compl. ¶¶ 43-63.) Plaintiff claims that Barone violated his right to be free from unlawful searches and

---

[2] The Town has attached Plaintiff's Notice of Claim and Summons with Notice to the Declaration of Neil Torczyner. (Dkt. No. 47.) The Court can take judicial notice of these publicly-filed documents, s*ee Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 463 n.6 (2d Cir. 2006), though only "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

seizures, and that Barone used excessive force against Plaintiff, in violation of the Fourth

Amendment.  Plaintiff also claims that Barone violated his Fifth Amendment Due Process and

Fourteenth Amendment Equal Protection rights.  Barone has not moved to dismiss these claims.

In his Third and Seventh Causes of Action, Plaintiff seeks to hold the Town liable for Barone's

actions under a theory of municipal liability pursuant to *Monell v. Department of Social Services*

*of the City of New York*, 436 U.S. 658 (1978).  The Town moves to dismiss these claims.  (Dkt.

No. 46.)  The Court held oral argument on September 20, 2012.

## II. Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all

reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  "In

adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated

on the face of the complaint, in documents appended to the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v.*

*Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in

4

original) (internal citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  If a plaintiff "ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (alteration in original) (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

B. Analysis

In his Third and Seventh Causes of Action, Plaintiff seeks to hold the Town liable under 42 U.S.C. § 1983, alleging that the Town has a custom or practice of tolerating civil rights abuses by its police officers and of failing to adequately discipline police officers.  Plaintiff also alleges that the Town has failed to adequately train and supervise its police officers.  The Town argues that Plaintiff has not pled any facts which would plausibly support an inference that the allegedly unconstitutional acts of Barone could be attributed to a municipal custom or policy. (Mem. of Law in Supp. of Def. Town of Harrison NY's Mot. to Dismiss ("Def.'s Mem.") 2.) The Town additionally argues that the *Monell* claims in the Amended Complaint are time barred

and cannot be deemed to "relate back" to the original complaint filed in June 2009.  (*Id.*)[3]

_____

[3] Plaintiff filed his Amended Complaint on August 9, 2011, after the three-year statute of limitations had expired for actions arising under 42 U.S.C. § 1983.  *See Cloverleaf Realty v. Town of Wawayanda*, 572 F.3d 93, 94 (2d Cir. 2009) (noting that the statute of limitations for a § 1983 claim in New York is three years).  Therefore, for any new claims asserted in Plaintiff's Amended Complaint to be timely, they must "relate back" to his Complaint filed on June 24, 2009, which beat the statute of limitations deadline by less than two weeks.  Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."  The Town argues that because Plaintiff's original Complaint, though it named the Town as a Defendant, did not articulate a theory of *Monell* liability, it did not adequately place the Town on notice that Plaintiff would bring such a claim, and Plaintiff's *Monell* claims therefore should not be deemed to relate back to his original Complaint.  (Def.'s Mem. 15-18.) The Town relies on *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir. 1973), in which the Second Circuit emphasized that "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading."  *Id.* at 526 (internal quotation marks omitted).  This approach focuses on the facts pled in the original complaint and "claims that are based on an entirely distinct set of factual allegations will not relate back."  *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted).  However, the Second Circuit has also held that "[p]rovided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, . . . even where the revised pleading contains legal theories not included in the original."  *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 116 (2d Cir. 1997).

Plaintiff named the Town of Harrison as a Defendant in his original Complaint (and first served a Notice of Claim on the Town in 2006), and his claims against the Town arise out of the same set of facts originally pled in Plaintiff's Complaint — Plaintiff's arrest and treatment by Barone on July 2, 2006.  The Town disagrees, arguing that Plaintiff's *Monell* claims require Plaintiff to allege new facts and allegations not made in his original Complaint.  (Reply Mem. Of Law in Supp. of Def. Town of Harrison NY's Mot. to Dismiss 9-10.)  Although a *Monell* claim does require Plaintiff to plead additional facts not asserted in his original Complaint, the Court deems Plaintiff's Amended Complaint to relate back to his original Complaint for several reasons.  First, Plaintiff's claims against the Town share a "common core of operative facts" with the facts pleaded in the original Complaint, and therefore are not based on an entirely distinct set of factual allegations.  *Conteh v. City of New York*, No. 00-CV-5787, 2001 WL 736783, at *3 (S.D.N.Y. June 28, 2001).  Plaintiff's alleged injuries — which form the basis of his claims against Barone, as well as his claims against the Town — arise from the alleged violations of his constitutional rights by Barone during Plaintiff's arrest.  Second, because the Town can only be held liable under a theory of municipal liability, it was put on notice of Plaintiff's claims when it was named as a Defendant in Plaintiff's original pro se Complaint.  *See id.* at *3 (holding that *Monell* claims added after the statute of limitations had run related back to

### 1. Section 1983 Municipal Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against agencies where plaintiff did not allege that any policy or custom caused the deprivation of his rights); *Arnold v. Westchester Cnty.*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against county because complaint "does not allege the existence of an unconstitutional custom or policy"). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In

---

the original complaint because they "stem[med] from the same factual circumstances" as the original complaint and thus put the city on notice of the additional claims); *Hood v. City of New York*, 739 F. Supp. 196, 200 (S.D.N.Y. 1990) (holding that *Monell* claims against the city related back to pro se plaintiff's original complaint where the city was originally named as a defendant, and the new theory of liability — that the alleged beating occurred because of a city custom or practice — shared the same "factual core" as the claim made in plaintiff's original complaint — that he was assaulted by the individual defendants). Here, the Town was on notice that Plaintiff, proceeding pro se when he filed his original Complaint, was attempting to hold the Town responsible for his injuries.

other words, a municipality may not be liable under Section 1983 "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

        "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).   "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (*i.e.*, a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken."  *Newton*, 566 F. Supp. 2d at 271 (footnote omitted) (citing *Monell*, 436 U.S. at 690, and *Pembaur*, 475 U.S. at 480-81).  "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ."  *Id.*  Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific

8

rule or regulation").  Therefore, a plaintiff may establish municipal liability by demonstrating

that a policy maker "indirectly caused the misconduct of a subordinate municipal employee by

acquiescing in a longstanding practice or custom which may fairly be said to represent official

policy."  *Miller v. Cnty. of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006).  To prevail on

this theory of municipal liability, however, a plaintiff must prove that the custom at issue is

permanent and well-settled.  *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court

"has long recognized that a plaintiff may be able to prove the existence of a widespread practice

that, although not authorized by written law or express municipal policy, is 'so permanent and

well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H.

Kress & Co.*, 398 U.S. 144, 167-68 (1970) (internal quotation marks omitted))).  Under this

theory, for example, a municipality may be liable for the failure to train or supervise its

employees where such a failure amounts to "deliberate indifference" to the risk that its

employees will unconstitutionally apply its policies without more training or supervision.

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton*,

489 U.S. at 387-90); *see also Johnson v. City of New York*, No. 06-CV-09426, 2011 WL 666161,

at *3 (S.D.N.Y. Feb. 15, 2011) (explaining that a plaintiff may demonstrate the existence of a

custom or policy by alleging "a failure by policymakers to provide adequate training or

supervision to subordinates to such an extent that it amounts to deliberate indifference to the

rights of those who come into contact with the municipal employees").

      Normally, "a custom or policy cannot be shown by pointing to a single instance of

unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at

271; *see also City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a

single incident of unconstitutional activity is not sufficient to impose liability under *Monell*,

unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation.  There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson*, 2011 WL 666161, at *3 (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection — an affirmative link — between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

## 2.  Plaintiff's Claims Against the Town of Harrison

The Court first examines whether Plaintiff has adequately alleged the existence of a municipal policy, custom, or practice.  Plaintiff's Amended Complaint contains two causes of action that allege municipal liability.  In the Third Cause of Action, Plaintiff claims that the Town has "permitted, tolerated and encouraged a pattern and practice of unjustified, unreasonable and illegal abuses of persons by its police officers."  (Am. Compl. ¶ 66.)  Plaintiff

claims that such abuses have been "covered up" by the Town (*id.* ¶ 67), and that the Town has "systematically failed to identify the improper abuse, misuse, violative acts and brutality by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision or restraint," (*id.* ¶ 69).  Plaintiff identifies several "systematic flaws" in the Town's police misconduct review process, which include:

    a.    Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;

    b.    Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

    c.    Police officers investigating incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

    d.    Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed;

    e.    Hastily accepting the policies' [sic] above as provided information from police reports regarding abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

(Am. Compl. ¶ 70.)  Plaintiff claims that this custom and policy of supporting and promoting police abuse led to his alleged constitutional violations.  (*Id.* ¶¶ 71-72.)

       In his Seventh Cause of Action, Plaintiff alleges that the Town and its agents "negligently, carelessly and recklessly failed to properly train and supervise their employees," specifically as to "how to control their tempers and exercise proper restraint and temperament," and that they "failed to properly supervise how they dealt with situations such as the one described herein."  (*Id.* ¶ 96.)  Plaintiff reiterates his allegation that the Town "has a pattern or practice of not conducting proper investigation and discipline of its officers for misconduct, thus allowing said officers, including named Defendants herein, to engage in misconduct without fear

of adverse consequences." (*Id.* ¶ 97.)  In summary, Plaintiff claims that the Town's alleged

failure to properly train and supervise police officers; its alleged failure to properly investigate

wrongdoing by police officers; and its alleged failure to properly discipline police officers who

violate individuals' constitutional rights constitutes a custom or practice that led to a violation of

Plaintiff's constitutional rights.  (Am. Compl. ¶¶ 64-74, 96-97.)[4]

     "*Monell's* policy or custom requirement is satisfied where a local government is faced

with a pattern of misconduct and does nothing, compelling the conclusion that the local

government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds*

*v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

701, 737 (1989)); *see also City of Canton*, 489 U.S. at 394-95 (O'Connor, J., concurring in part

and dissenting in part) ("Where . . . a claim of municipal liability is predicated upon a failure to

act, the requisite degree of fault must be shown by proof of a background of events and

circumstances which establish that the 'policy of inaction' is the functional equivalent of a

decision by the city itself to violate the Constitution.").  However, such a failure to act, train, or

supervise can constitute a municipal custom "only where the need to act is so obvious, and the

inadequacy of current practices so likely to result in a deprivation of federal rights, that the

municipality or official can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at

192 (citing *City of Canton*, 489 U.S. at 390); *see also Marte v. N.Y.C. Police Dep't*, No. 10-CV-

3706, 2010 WL 4176696, at *2 (S.D.N.Y. Oct. 12, 2010) (noting that a municipality's failure to

---

    [4] Although Plaintiff uses the word "policy" in his Amended Complaint (Am. Compl. ¶ 72), he has neither alleged that there is an officially promulgated municipal policy, nor identified any such policy, that condones the use of excessive force by police officers. *See Newton*, 566 F. Supp. 2d at 271 (describing what constitutes a municipal policy).  Therefore, Plaintiff has not alleged the existence of any municipal policy, and instead the Court focuses its inquiry on whether he has alleged the existence of a municipal custom or practice.

train its employees can support § 1983 liability only where "'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" (quoting *City of Canton*, 489 U.S. at 388)).  In *City of Canton v. Harris*, 489 U.S. 378, the Supreme Court set out the "deliberate indifference" standard in the context of a claim for failure to train, but "the stringent causation and culpability requirements set out in that case have been applied to a broad range of supervisory liability claims," including claims for failure to supervise and failure to discipline.  *Reynolds*, 506 F.3d at 192 (citing *Amnesty America*, 361 F.3d at 127 (failure to supervise) and *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.1994) (failure to discipline)); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (noting that "deliberate indifference" is a "stringent standard").  Therefore, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Amnesty America*, 361 F.3d at 126 (quoting *City of Canton*, 489 U.S. at 388 (citations omitted)); *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the [municipality], alerted to the [unconstitutional action by its employees], exhibited deliberate indifference"); *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").

The Second Circuit has set out three requirements which must be met before a municipality's failure to act constitutes deliberate indifference to the rights of citizens: first, that a policymaker knows "'to a moral certainty'" that his or her employees will confront a given situation; second, "'that the situation either presents the employee with a difficult choice of the

sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'"; and third, "'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)); *see also Reynolds*, 506 F.3d at 192 (finding deliberate indifference "where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights"); *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (dismissing claim for failure to show that city's actions amounted to deliberate indifference).  The Supreme Court also has noted, however, that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick* , 131 S. Ct. at 1359-60 (internal quotation marks omitted).

First, Plaintiff has not alleged any facts to support an inference that the Town has a custom or practice of tolerating police abuse, or of failing to discipline and supervise miscreant police officers.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive a motion to dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos*, 847 F. Supp. 2d at 576 (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d

14

Cir. 1993)).  Put another way, mere allegations of a municipal custom or practice of tolerating

official misconduct are insufficient to demonstrate the existence of such a custom unless

supported by factual details.  *See Moore v. City of New York*, No. 08-CV-8879, 2010 WL

742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a

'policy' or 'custom' 'without any facts suggesting the policy's existence, are plainly

insufficient.'" (quoting *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009))); *see*

*also Duncan v. City of New York*, No. 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14,

2012) (holding that "boilerplate statements" claiming that the city has a custom of making and

tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal

liability under *Monell*"); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at

*3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language — that the

City 'fail[ed] to adequately [] discipline[] and supervise' employees and 'fail[e]d to promulgate

and put into effect appropriate rules and regulations applicable to the duties and behavior' of its

employees — is insufficient to raise an inference of the existence of a custom or policy, let alone

that such a policy caused Plaintiff to be arrested without probable cause." (citation omitted)).

Plaintiff's Third Cause of Action, though lengthy, consists of little more than vague, conclusory

allegations that the Town permitted, tolerated, and covered up police abuses, while failing to

discipline and supervise offending police officers.  (Am. Compl. ¶¶ 65-70.)[5]  These allegations

---

[5] For example, Plaintiff claims that police officers regularly engage in improper conduct, that such conduct is "covered up" the Town, that the Town habitually "side[s] with the abuse of persons so affected in nearly all cases, despite vast evidence of wrongdoing by its officers," and that the Town has failed to properly identify the police abuse and subject wrongdoers to discipline.  (Am. Compl. ¶¶ 66-69.)  However, despite Plaintiff's claim that there is "vast evidence" of police misconduct, Plaintiff does not give one specific instance of such misconduct (other than the incident which forms the basis of his claim against Barone), and does not substantiate any of these conclusory assertions with a single statement of fact.  At oral argument,

are "conclusory, and therefore must be disregarded." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (citing *Iqbal*, 556 U.S. at 678-79) (dismissing allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency, and contained only legal conclusions and boilerplate), *aff'd*, No. 11-CV-4568, 2012 WL 1701356 (2d Cir. May 16, 2012); *see also Graham v. Cnty. of Erie*, No. 11-CV-605, 2012 WL 1980609, at *2 (W.D.N.Y. May 31, 2012) (noting that conclusory allegations in a complaint are not entitled to the presumption of truth and must be stripped away (citing *Iqbal*, 556 U.S. at 678-79)).

Plaintiff also alleges six "systematic flaws" in the Town's misconduct review process (Am. Compl. ¶ 70), which he claims demonstrate "a custom of intentionally promoting and supporting officers' and officials' violations of [] § 1983," (*id.* ¶ 71).  However, Plaintiff provides no facts to substantiate these allegations, which like the rest of the allegations in the Third Cause of Action, are wholly conclusory.  Plaintiff claims, for example, that police officers investigating incidents "systematically fail to credit testimony by non-police officer witnesses[,] . . . fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved[,] . . . [and] exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed."  (*Id.* ¶ 70.)  These statements are merely "naked assertion[s] devoid of further factual enhancement," and do not contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation

---

when pressed on these deficiencies, counsel for Plaintiff suggested that Plaintiff had heard of other instances of police misconduct.  But, the Amended Complaint makes no mention of any other specific instance of misconduct by a Town police officer.

marks omitted); s*ee also Perez v. Metro. Transp. Auth.*, No. 11-CV-8655, 2012 WL 1943943, at

*4 (S.D.N.Y. May 29, 2012) ("The custom and policy must be described with factual specificity,

rather than bare and conclusory statements."). In *Missel*, the Second Circuit addressed a

plaintiff's *Monell* claim, which involved allegations of the existence of a specific affirmative

municipal policy and contained some details about the police officer's prior misconduct. 351 F.

App'x at 545. The Second Circuit held that "the allegations that [the police officer] acted

pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly

insufficient." *Id.* And, while the plaintiff alleged that the police officer had a history of

misconduct, of which the municipality should have been aware, the *Missel* court held that these

allegations were "conclusory and speculative" and did "not provide a plausible basis for an

inference that the [municipality] failed to give [the officer] proper training." *Id.* at 546.

Plaintiff's Amended Complaint suffers from the same deficiencies. Plaintiff, for

example, has not identified *any* details about other instances of police misconduct, either by

Barone or other officers, which would suggest a pattern or practice of abuse, nor has he

identified any reports or investigations which suggest deficiencies in the Town's misconduct

review process. *Cf. Graham*, 2012 WL 1980609, at *5-6 (denying motion to dismiss where

plaintiff demonstrated "a pattern of documented shortcomings," which included several

instances of misconduct documented by a United States Department of Justice ("DOJ")

investigation); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012)

(denying motion to dismiss where the "Amended Complaint point[ed] to over fifteen cases

where City prosecutors allegedly committed misconduct, and allege[d] the existence of many

more such cases in the form of unpublished opinions"); *Bektic-Marrero v. Goldberg*, 850 F.

Supp. 2d 418, 431 (S.D.N.Y. 2012) (denying motion to dismiss where plaintiff supported her

17

allegations against the County with a DOJ report which outlined systematic failures in the jail's provision of medical care to inmates).

More troubling, Plaintiff copied the list of "systematic flaws" in his Amended Complaint — which he claims support the existence of a municipal custom of tolerating and covering up police abuse — almost verbatim from the allegations made by another plaintiff in *Carbajal v. County of Nassau*, 271 F. Supp. 2d 415, 423 (E.D.N.Y. 2003).  The plaintiff in *Carbajal* alleged the following misconduct by other municipalities:

> [a] Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officer's actions regardless of whether such actions are justified; [b] Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident; [c] Police officers investigating unwarranted incidents systematically fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved; [d] Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed; [e] Reports in brutality cases are not reviewed for accuracy by supervisory officers [and][c]onclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information; [f] The County, County Police, County Sheriff, Nassau DA, Village, Village Police, Salvatore Mancuso, 'John Does' 1–10 hastily accepts the polices' above-as provided information from police reports regarding abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

*Id.*  At oral argument, counsel for Plaintiff admitted to block copying these allegations from *Carbajal*, but asserted that they were fair inferences from his client's beliefs (which were not included in the Amended Complaint about other police misconduct).[6]  Although the district court in *Carbajal* denied defendants' motion to dismiss the claims against the Village of Hempstead, that case pre-dates *Twombly* and *Iqbal*.  The court therefore did not apply *Twombly's* plausibility

---

[6] Counsel for Plaintiff is reminded of his obligation under Rule 11 of the Federal Rules of Civil Procedure that he must have a good faith basis for allegations made in the pleadings.

18

standard, which requires that the complaint contain enough *facts* to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).[7]

The only *facts* included in Plaintiff's Amended Complaint relate to Plaintiff's own arrest by Barone, and it is well settled that "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Newton*, 566 F. Supp. 2d at 271. Plaintiff therefore has not plausibly alleged any facts to support an inference that the Town has a custom of tolerating or covering up police abuses. *See Garcia v. Bloomberg*, No. 11-CV-6957, 2012 WL 2045756, at *10 (S.D.N.Y. June 7, 2012) (dismissing *Monell* claims where "plaintiffs [] failed to allege 'factual content that allows the court to draw the reasonable

---

[7] The Court has identified two other recent cases in the Second Circuit where plaintiffs have made these same *exact* allegations, but in those cases, the district courts denied defendants' motions to dismiss. *See Sorrell v. Inc. Village of Lynbrook*, No. 10-CV-49, 2012 WL 1999642, at *8 (E.D.N.Y. June 4, 2012) (denying motion to dismiss where plaintiff listed the same six "systematic flaws," explaining that "[a]lthough this is a close call . . . these allegations do cross the line between possibility and plausibility of 'entitlement to relief'"); *Selinger v. City of New York*, No. 08-CV-2096, 2009 WL 1883782, at *7 (S.D.N.Y. June 30, 2009) (denying motion to dismiss where complaint made similar allegations and reasoning that the plaintiff's allegations of failure to discipline gave rise to an inference of an unlawful municipal policy). Some other district courts in the Second Circuit have likewise applied a less stringent pleading standard to *Monell* claims than *Iqbal* and *Twombly* seemingly require. *See, e.g.*, *Devarnne v. City of Schenectay*, No. 10-CV-1037, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (summarily denying motion to dismiss *Monell* claims even though plaintiff alleged no facts relating to a municipal custom or policy, holding that "[i]t [could] reasonably and plausibly be inferred from the nature of the alleged constitutional violations that Plaintiff's injuries were caused by a municipal custom or policy (including the failure to adequately train or deliberate indifference to constitutional rights)"); *Kimbrough v. Town of Dewitt Police Dep't*, No. 08-CV-03, 2010 WL 3724121, at *11 (N.D.N.Y. Mar. 8, 2010) (denying motion to dismiss where plaintiff merely alleged a failure to train by the municipality, noting that "it is hard to fathom how a plaintiff could provide more detail at the pleading stage regarding a *Monell* claim based on failure to train"). However, in light of *Twombly*, *Iqbal*, and *Missel*, the Court respectfully disagrees that such assertions, unaccompanied by factual allegations, can plausibly state a claim for municipal liability. *See Simms v. City of New York*, No. 11-CV-4568, 2012 WL 1701356, at *3 n.4 (2d Cir. May 16, 2012) (describing a plaintiff's *Iqbal* obligation to provide factual allegations to support § 1983 failure-to-train claims against a municipality).

inference' that the defendants are liable on [municipal liability] claims" (quoting *Iqbal*, 556 U.S. at 678)).

Nor has Plaintiff adequately alleged that his injuries were the result of the Town's deliberate indifference to, or acquiescence in, police officers' allegedly unlawful conduct.  A municipality may be liable for the failure to supervise or discipline its employees "only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need."  *Reynolds*, 506 F.3d at 192 (citing *City of Canton*, 489 U.S. at 390).  To state a claim against a municipality for its failure to act, therefore, a plaintiff must "allege that 'the need for more or better supervision . . . was obvious,' but that the defendant 'made no meaningful attempt' to prevent the constitutional violation."  *Missel*, 351 F. App'x at 546 (quoting *Amnesty America*, 361 F.3d at 127); *see also Connick*, 131 S. Ct. at 1360 ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").  Although Plaintiff claims that incidents of police abuse have been "covered up by [the Town]," and that there is "vast evidence of wrongdoing by [Town police] officers" (Am Compl. ¶¶ 67-68), Plaintiff alleges not one single example to support these assertions.  Therefore, Plaintiff's claims are insufficient to support an inference that the Town was "on notice" of misconduct by its police officers, but failed to act, such that the Town exhibited deliberate indifference to the constitutional rights of its citizens. *See Missel*, 352 F. App'x at 546 ("[Plaintiff] has made insufficient factual allegations that the County Defendants were on notice of and took no action in response to [the officer's] conduct, or that [the officer] had a history of such behavior that Defendants deliberately ignored."); *see also Jenkins*, 478 F.3d at 94 (noting that to state a claim that a municipality's failure to supervise

constitutes deliberate indifference, "the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation").  Plaintiff therefore has not plausibly stated a claim that the Town has a custom or practice of condoning police officer abuses or of failing to discipline and supervise its police officers.

Finally, with regard to Plaintiff's claim that the Town failed to properly train its police officers, the Amended Complaint likewise does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Although "a municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, [] a claim based on this theory still must be properly pled under *Iqbal*."  *Simms*, 2011 WL 4543051, at *2 (citation omitted).  More to the point, Plaintiff must allege that the Town was on "notice that a course of training is deficient in a particular respect."  *Connick*, 131 S. Ct. at 1360.  Thus, Plaintiff must allege that the type of police misconduct at issue here — the alleged use of excessive force — was known to the Town, and not just that the Town's police officers engage in misconduct.  *See id.* (holding that claim that district attorney's office was aware of *Brady* violations was insufficient to make out a *Monell* claim because the other instances of alleged misconduct involved failures to disclose different materials than those at issue in that case).  Plaintiff must also identify other specific instances of police misconduct, because "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Id.* (quoting *Brown*, 520 U.S. at 409).  Instead, Plaintiff has merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct

21

which could be attributed to a failure to train.  In fact, Plaintiff has done no more than make conclusory assertions that the Town "negligently, carelessly, and recklessly failed to properly train . . . its employees," with regard to "how to control their tempers and exercise proper restraint and temperament."  (Am. Compl. ¶ 96.)

In *Amnesty America*, the Second Circuit suggested in dicta that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage."  361 F.3d at 130 n. 10.  However, such a relaxed pleading standard is difficult to reconcile with *Twombly's* subsequent pronouncement that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions," *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks omitted), or with *Iqbal's* requirement that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  After *Twombly* and *Iqbal*, the Second Circuit has made clear that Plaintiff must do more than merely state that the municipality's failure to train caused his constitutional injury.  *See Simms*, 2012 WL 1701356, at *3 n.4; *see also Santos*, 847 F. Supp. 2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory allegations of the plaintiff, [plaintiff's] claims against the City are dismissed with prejudice."); *Simms*, 2011 WL 4543051, at *2 n.3 ("Since [*Twombly* and *Iqbal*], courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." (collecting cases)).

To state a claim for municipal liability based on failure to train, Plaintiff therefore must allege facts which support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the City's 'policies' or 'customs' caused [the] alleged violations of plaintiff's rights"); *Simms*, 2011 WL 4543051, at *2 (dismissing failure to train claim where there was "not enough factual material in the Complaint for the court to reasonably infer that the police misconduct [plaintiff] allege[d] was the result of anything other than the individual acts of the arresting officer"); *Johnson*, 2011 WL 666161, at *4 (holding that complaint that "contain[ed] only an unsupported conclusory allegation that the City failed to train the individual Defendants" could not withstand a motion to dismiss because plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").  Plaintiff's mere claim that the Town failed to train and supervise its police officers is a "boilerplate assertion[]" and is insufficient, without more, to state a *Monell* claim.  *Araujo*, 2010 WL 1049583, at *9 (internal quotation marks omitted); *see also Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("'It is questionable whether the boilerplate *Monell* claim often included in many § 1983 cases . . . was ever sufficient to state a claim upon which relief could be granted.  In light of [*Iqbal* and *Twombly*], it

23

is now clear that such boilerplate claims do not rise to the level of plausibility.'" (quoting *Santiago v. City of New York*, No. 09-CV-856, 2009 WL 2734667, at*3 (E.D.N.Y. Aug. 18, 2009))).

Nor has Plaintiff pled any facts suggesting that an alleged training deficiency caused his constitutional injury, for example by identifying "procedural manuals or training guides" or by "highlight[ing] relevant particular aspects of police training or supervision." *Marte*, 2010 WL 4176696, at *3.  The only facts which Plaintiff includes in the Amended Complaint relate to his interactions with Barone on the night of his arrest (Am. Compl. ¶¶ 23-42), but "the facts provided in connection with the single incident experienced by [] [P]laintiff does not put the [Town] on notice as to what its policymakers have done or failed to do that amount[s] to deliberate indifference to unconstitutional conduct by its police force," *Rodriguez v. City of New York*, No. 10-CV-1849, 2011 WL 4344057, at *5 (S.D.N.Y. Sept. 7, 2011).  Because Plaintiff has done no more than make conclusory assertions, he has not adequately alleged that the Town's training policies caused Plaintiff's injuries, thus providing an independent basis to dismiss this claim.

### III. Conclusion

For the reasons stated herein, the Town of Harrison's Motion to Dismiss is granted

without prejudice. The Clerk of Court is respectfully directed to terminate the pending motion,

(Dkt. No. 46).

SO ORDERED.

Dated:      White Plains, New York
          September 26, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25

Service List:

Gary Mitchel Gash, Esq.
Gash & Associates, P.C.
235 Main Street, 4th Floor
White Plains, NY 10601
914-328-8800
Email: gashlaw@aol.com
*Counsel for Plaintiff*

Neil Stuart Torczyner, Esq.
Friedman, Harfenist, Kraut & Perlstein
3000 Marcus Avenue, Suite 2E1
Lake Success, NY 10577
(516)-355-9612
Email: ntorczyner@friedharf.com
*Counsel for Defendants*